UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

CIVIL ACTION NO. 5:06-CV-00208-JHM

DYNALECTRIC COMPANY                                                              PLAINTIFF

v.

WHITTENBERG CONSTRUCTION
COMPANY, LUTHER F. CARSON
FOUR RIVERS CENTER, INC.,
AND RAY BLACK & SON, INC.                                                     DEFENDANTS

and

LUTHER F. CARSON FOUR RIVERS
CENTER, INC.                                                             THIRD-PARTY PLAINTIFF

v.

ZEIDLER PARTNERSHIP, INC.                                        THIRD-PARTY DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion for summary judgment [DN 109] by Defendant Whittenberg Construction Company ("Whittenberg") to dismiss Plaintiff Dynalectric Company's ("Dynalectric") claim of equitable adjustment and its claim seeking recovery of retention funds. Fully briefed, the matters are ripe for decision. For the reasons that follow, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of

identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). Rule 56 requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## II. BACKGROUND FACTS

This action arose out of the construction of a performing arts center in Paducah, Kentucky, named the Luther F. Carson Four Rivers Center ("Owner"). Whittenberg was the general contractor for the project. Dynalectric was the electrical subcontractor. Ray Black & Son, Inc., was Owner's representative hired to oversee the construction. Zeidler Partnership, Inc. ("Zeidler") was the architect on the project. On December 21, 2001, Dynalectric entered into a Standard Form of Agreement Between Contractor and Subcontractor with Whittenberg. Whittenberg, in turn, entered into the prime contract with Owner. The electrical subcontract provided that Dynalectric would be bound by the terms of the prime contract as well as its general and supplemental conditions. The "contract documents" were defined in Article 1 of the general contract to include the drawings, specifications, and the General Conditions in AIA Document A201-1997.

Dynalectric's work on the project, which was substantially completed on February 24, 2004, suffered from several delays. Owner points out that Dynalectric failed to properly supervise its workers and as a result failed to meet promised deadlines. And it notes that both the drywall subcontractor and the sound contractor complained about Dynalectric holding up their work; and that other subcontractors at times had to direct Dynalectric's employees due to a lack of supervision by Dynalectric's project manager who was not on the job. Dynalectric, for its part, believes its productivity was negatively impacted by Whittenberg's mismanagement of the schedule and it has submitted an equitable adjustment claim in the amount of $682,480.00.

There was also an issue with Dynalectric's work on a chandelier system for the Carson Center lobby. That system was included as a project "allowance," whereby Dynalectric would work with its own vendors, obtain costs for chandelier system materials, and then submit those items along with its bid to Whittenberg. Dynalectric turned the task of creating the chandelier system over to Rexel Southland in Owensboro, Kentucky. Rexel then hired LHI Lighting in Louisville, Kentucky. LHI divided the task into two parts: (a) chandelier light fabrication, and (b) lifting and lowering device fabrication. LHI used Creative Light Source, Inc. in North Las Vegas, Nevada to fabricate the chandelier lights and it used Lighting & Lowering Systems, Inc. in Broadview, Illinois to meet the system requirements for the lifting and lowering device.

The chandelier lifting mechanism was finished first. Dynalectric submitted a lifting device rated for a maxium of 1,100 pounds to Steve Samuels of Whittenberg who, in turn, forwarded it to the architect and thereafter the engineer. The engineer signed off on April 23, 2003, and then Zeidler, the architect, signed off on May 8, 2003. Both the architect and the engineer made a handwritten note that the proposed lifting mechanism was approved provided that Dynalectric first

"verify weight of chandelier and capacity of lifting device." (Nollmann depo. Ex. 6.) Dynalectric acknowledges that this limitation was listed on the construction documents and that its representatives were at some point aware that they needed to verify the weight of the chandelier.

The fabrication of the chandelier itself was a bit more complicated. Creative Light Source, Dynalectric's supplier, had trouble producing the "spun bowl" as shown in the original design. Zeidler therefore sketched a new version of the chandelier lights with an alternative "arm" configuration. Dynalectric provided this sketch to Creative Light Source, who chose the material and constructed the chandelier. Unfortunately, the completed chandelier was too heavy for the lifting and lowering device. Because the chandelier system failed to work, Owner withheld "retainage" from Whittenberg pursuant to § 9.8.5 of its contract, and Whittenberg likewise withheld payment from Dynalectric. Dynalectric has offered several fixes, which have been rejected, and now seeks to recover $77,000 in retention funds from Whittenberg.

### III. DISCUSSION

Whittenberg's motion for summary judgment seeks to dismiss the two remaining claims asserted by Dynalectric. Whittenberg first seeks dismissal of Dynalectric's claim of equitable adjustment in the amount of $682,480 for additional funds expended as a result of alleged delays, disruptions, and accelerations to the performance of Plaintiff's work. Defendant contends that the claim is precluded by the pay application waiver as well as by the terms of both the prime contract and subcontract. Dynalectric's second claim is for recovery of the unpaid subcontract balance of $77,000 currently being held by Owner until the chandelier issue is resolved. Whittenberg states that the contract provides for payment to Dynalectric once Whittenberg gets paid for the chandelier system, and until that occurs, the claim is not ripe. Dynalectric claims that Whittenberg is engaging

4

in bad faith by failing to resolve the chandelier issue.

## A. Equitable Adjustment Claim

"An 'equitable adjustment' is a mechanism used in fixed-price construction contracts intended to fairly compensate a contractor for a contract modification resulting from changes in circumstances occurring after the execution of the original contract." Mactec, Inc. v. Bechtel Jacobs Co., 346 F.App'x. 59, 63 (6th Cir. 2009). An equitable adjustment can come in two forms: "an extension in the time a contractor has to complete a contract or additional monetary compensation for a change in the work required." Id. "To receive an equitable adjustment . . . a contractor must show three necessary elements-liability, causation, and resultant injury." Servidone Constr. Corp. v. United States, 931 F.2d 860, 861 (Fed. Cir. 1991).

Dynalectric seeks an equitable adjustment to its contract price in the amount of $682,480 "because of the schedule delays, disruptions, and accelerations." (Pl.'s Mem. in Opp'n to Mot. Summ. J. Ex. A, at 28.) The claim is further broken down into Delay Costs in the amount of $59,156 and Labor Impact Costs totaling $623,324. Whittenberg alleges that Dynalectric is precluded from the equitable adjustment because of Section 5 of the Subcontract as well as the "no damage for delay" provisions, Section 9 of the subcontract and Section 8.3.3 of the prime contract. "No damage for delay" clauses, used to limit delay-type damages, "'are commonly used in the construction industry and generally recognized as valid and enforceable.'" Apex Contracting, Inc., v. City of Paris, 2004 WL 758276, at *2 (Ky. Ct. App. April 9, 2004) (quoting John E. Green Plumbing & Heating Co. v. Turner Constr. Co., 742 F.2d 965, 966 (6th Cir. 1984)). "'No damage for delay' clauses have been recognized as enforceable by Kentucky courts." Apex Contracting, 2004 WL 758276 at *2 (citing Humphreys v. J.B. Michael & Co., 341 S.W.2d 229, (Ky. 1960),

5

overruled on other grounds by Foley Constr. Co. v. Ward, 375 S.W.2d 392 (Ky. 1963)). See Cumberland Valley Contractors, Inc. v. Bell County Coal Corp., 238 S.W.3d 644, 650 (Ky. 2007) ("Recognizing the importance of freedom to contract, the courts of [Kentucky] have traditionally enforced exculpatory provisions unless such enforcement violates public policy."). "However, because of their harsh effects, these clauses are to be strictly construed." John E. Green Plumbing, 742 F.2d at 966. See Hargis v. Baize, 168 S.W.3d 36, 47 (Ky. 2005) (exculpatory clauses "are disfavored and strictly construed against the parties relying on them").

Whittenberg first cites Section 5 of the subcontract which provides in relevant part:

> Section 5. CHANGES. The Contractor may at any time by written order, and without notice to the Subcontractor's sureties, make changes in, additions to and omissions from the work to be performed . . . . If such changes should change the scope of work of the Subcontractor then the Subcontractor's price shall be equitably adjusted to the extent such adjustment is provided for in the prime contract, provided that the party affected makes written claims therefore within ten days of the time any such change is ordered . . . .

(Def.'s Mot. 3.) The "no damage for delay" provision appearing in the subcontract cited by Whittenberg provides:

> Section 9. DELAYS. (a) In the event the Subcontractor's performance of this Subcontract is delayed or interfered with by acts of the Owner, Contractor, or other subcontractors, it may request an extension of time for the performance of same, as hereinafter provided, but shall not be entitled to any increase in the Subcontract price or to damages or additional compensation as a consequence of such delays or interference, except to the extent that the prime contract entitles the Contractor to compensation for such delays and then only to the extent of any amount that the Contractor may, on behalf of the Subcontractor, recover from the Owner for such delays.

(Id. at 3-4.) Section 8.3.3 of the prime contract provides:

> 8.3.3 [A]n extension in the Contract time . . . shall be the sole remedy of the Contractor for any (1) delay in the commencement, prosecution

> or completion of the work, (2) hindrance or obstruction in the performance of the Work, 3) [sic] loss of productivity, or (4) other similar claims (collectively referred to in this Paragraph 7.3.3 [sic] as "Delays") unless a Delay is caused by the act of omissions of the Owner, its agent, servants or employees or representatives and then only to the extent such acts or omissions continue after the Contractor furnishes the Owner with written notice of such Delays. Contractor may be entitled to an increase in the Contract Sum to the extent of the cost of its extended General Conditions attributable to the Delays; but neither Contractor nor any Subcontractor claiming by, through or under Contractor shall be entitled to any compensation or remuneration of any kind for inefficiencies, lost opportunities, consequential damages or any kind of impact costs or damages."

(Id. at 4-5.)

"'The construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court.'" Wright v. Wright, 2010 WL 1927683, at *1 (Ky. Ct. App. May 14, 2010) (quoting Frear v. P.T.A. Indus. Inc., 103 S.W.3d 99, 105 (Ky. 2003)). "Any contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible." City of Louisa v. Newland, 705 S.W.2d 916, 919 (Ky. 1986). "[I]n the absence of ambiguity a written instrument will be enforced strictly according to its terms and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." Frear, 103 S.W.3d at 106 (internal citation omitted). It is a fundamental principle of Kentucky law that courts "cannot deny enforcement of an otherwise valid contract merely because its enforcement would result in inequities in a particular case." More v. Carnes, 214 S.W.2d 984, 992 (Ky. 1948). "Ultimately, the parties are bound by the contracts they enter into, and courts are not at liberty to remake those contracts, or impose terms the parties did not make themselves." J.A. St. & Assoc. v. Bud Rife Const. Co., 2010 WL 2326538, at *9 ( Ky. Ct. App. June 11, 2010) (citing Perry v. Perry, 143 S.W.3d 632, 633 (Ky. Ct. App. 2004)).

7

Dynalectric alleges in Correspondence 103 that it was "experiencing and incurring additional costs for delays and disruptions to its work, and that it would seek additional compensation once those costs have been incurred." (Pl.'s Mem. 3.) The equitable adjustment claim at hand represents the additional compensation sought. Dynalectric has divided its claim into two categories, (1) Delay Costs in the amount of $59,156 and, (2) Labor Impact Costs of $623,324.

First however, Whittenberg argues that Dynalectric has waived any such claims by periodically submitting applications for payment containing language providing that in exchange for payment, the subcontractor "does hereby waive, release, and relinquish all claim or right of lien which the undersigned may now have upon the premises." The Court agrees with Dynalectric that such language releases liens and claims of liens, but that it is not comprehensive enough to constitute a complete release of any and all existing claims of any kind.

Next, the parties devote much of their briefing to whether Dynalectric provided sufficient notice of the claims to Whittenberg as the contract provides, and to whether Whittenberg is estopped from relying upon those notice provisions. Because the Court finds that other contract provisions control this dispute, for purposes of this motion, the Court finds that notice to Whittenberg was sufficient.

As for as the Delay Cost claim, the Court finds the "no damage for delay" provision of the contract controlling here. Dynalectric's claim, as first stated in Correspondence No. 103, dated December 31, 2003, was for additional costs due to delays in the completion of the project. Section 9 of the contract between Dynalectric and Whittenberg provides unequivocally that if the subcontractor is delayed, it may request an extension of time, but it shall not be entitled to any additional compensation as a consequence of such delays or interference, "**except to the extent that**

**the prime contract entitles the Contractor to compensation for such delays and then only to the extent of any amount the Contractor may, on behalf of the Subcontractor, recover from the Owner for such delays**." (Def.'s Mot. 3-4) (emphasis added.) It is undisputed that Whittenberg has not recovered any additional compensation from the Owner for the alleged delay and interference. In making its argument that Whittenberg should be estopped from relying upon the notice provisions of the contract, Dynalectric acknowledges that Whittenberg submitted Dynalectric's equitable claim to the Owner as legitimate subcontractor costs. The Owner has not paid the claim and under the clear language of Section 9, Dynalectric is not entitled to the additional compensation.

That part of Dynalectric's claim labeled as Labor Impact Costs suffers the same fate. The prime contract between the Owner and Whittenberg provides a complete limitation on impact damages. Section 8.3.3 states: "neither Contractor nor any Subcontractor claiming by, through or under Contractor shall be entitled to any compensation or remuneration of any kind for . . . **any kind of impact costs or damages**." (Id. at 5) (emphasis added.) Therefore any kind of impact costs, irregardless of their origin, are unambiguously precluded by the contract. See U.S. ex rel. Tennessee Valley Marble Holding Co. v. Grunley Constr., 433 F. Supp. 2d 104 (D.D.C. 2006) (court finding "no damage for delay" provision precluded contractor's claim for impact costs).

Dynalectric has advanced several alternative arguments seeking to escape the contractual limitations above. First, Plaintiff claims that Defendant waived the requirements found in the subcontract. Second, it is alleged that Defendant is equitably estopped from denying the equitable adjustment claim. Third, Plaintiff alleges that they are entitled to damages because cardinal changes were implemented. Fourth, Plaintiff has advanced a claim of unjust enrichment. Lastly, Plaintiff

9

alleges that Defendant actively interfered with its work. The arguments are discussed in turn below.

**1. Waiver**

It is well settled that "[a] party to a construction contract can waive a right merely by acting or failing to act in a certain way . . . so as to lose the ability to enforce a right or claim." Bruner & O'Connor, supra, § 7:148. "Waiver is the intentional voluntary relinquishment of a known right." Patriot Homes, Inc. v. Wise, 2006 WL 3457248, at *3 (Ky. Ct. App. Dec. 1, 2006) (citing Harris Bros. Const. Co. v. Crider, 497 S.W.2d 731, 733 (Ky. 1973). "A waiver may be either express or implied, although waiver will not be inferred lightly." Conseco Fin. Servicing Corp. v. Wilder, 47 S.W.3d 335, 344 (Ky. Ct. App. 2001). "It is the universally declared rule that what facts are necessary to create a waiver is a question of law." Aenta Ins.. Co. v. Weekley, 24 S.W.2d 292, 293 (Ky. Ct. App. 1930).

Dynalectric alleges that Whittenberg waived is right to enforce the provisions of the contract because "Whittenberg . . . did not reject the [sic] any of the 5 Notice Letters . . . or object to any of them. Rather . . . Whittenberg attempted to . . . negotiate and offered to pay a reduced amount of the equitable claim. . . and passed those [sic] Dynalectric's Equitable Claim on to the owner as legitimate subcontractor costs." (Pl.'s Mem. 9.) The Court disagrees. Whittenberg, by submitting a claim to Owner for possible payment or negotiating the claim for delay and impact damages, did not operate as a clear and unequivocal waiver. See Lexicon, 2009 WL 72215 at * 8 ("We decline to say now that [contractor] simply noting that [subcontractor] might have a possible claim for delay and impact damages when dealing with [owner] amounts to a clear and unequivocal waiver."). Nowhere does the record indicate that Whittenberg ever affirmed the validity of Dynalectric's claim; "it merely presented the equitable claim as exposures to it." Id. Additionally, "mere silence

10

will not amount to a waiver unless there is a duty to speak." QSI-Fostoria D.C. v. Gen. Elec. Capital Bus. Asset Funding Corp., 2010 WL 2993980, at *6 (6th Cir. July 29, 2010).  Dynalectric has not demonstrated that Whittenberg had any duty to speak after receiving the 5 notice letters.  The waiver defense is without merit.

### 2.  Equitable Estoppel

The Court also disagrees with Dynalectric that the principle of equitable estoppel applies based upon the same facts alleged in Dynalectric's waiver defense.  The essential elements of equitable estoppel are:

> '(1) conduct which amounts to a false representation or concealment of material facts, or[,] at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.'

Weiand v. Bd. of Tr. of Ky. Ret. Sys., 25 S.W.3d 88, 91 (Ky. 2000) (quoting Elec. & Water Plant Bd. of Frankfort v. Suburban Acres Dev. Inc., 513 S.W.2d 489, 491 (Ky. 1974)).[1]

The record is void of any facts to suggest that Whittenberg engaged in conduct which amounted to a false representation or concealment of a material fact.  Further, it cannot be said that Dynalectric lacked knowledge of any material facts or the means to acquire knowledge regarding

---

[1]     Although similar to the equitable estoppel defense, "waiver differs from estoppel primarily because it does not require proof of the other party having been misled." Greathouse v. Shreve, 891 S.W.2d 387, 390 (Ky. 1995) (internal citation omitted).

11

the damages claimed; they had access to the contracts. See City of Georgetown v. Mulberry, 485 S.W.2d 503, 505 (Ky. 1972) ("[N]o estoppel arises from mere silence where the facts are equally known to both parties."); Lingar v. Harlan Fuel Co., 182 S.W.2d 657, 659 (Ky. 1944) ("[O]ne may not omit to avail himself of readily accessible sources of information concerning particular facts, and thereafter plead as an estoppel the silence of another who has been guilty of no act calculated to induce the party claiming ignorance to refrain from investigating."). The doctrine of equitable estoppel is inapplicable based on the facts alleged.

### 3. Cardinal Change

A cardinal change occurs "when the [contractor] effects an alteration in the work so drastic that it effectively requires the [subcontractor] to perform duties materially different from those originally bargained for." Allied Materials & Equip. Co. v. United States, 569 F.2d 562, 563 (Ct. Cl. 1978). "By definition, then a cardinal change is so profound that it is not redressable under the contract, and thus renders the [party initiating the change] in breach." L.K. Comstock & Co. v. Becon Const. Co., 932 F. Supp. 906, 937 (E.D. Ky. 1993) (quoting Allied Materials, 569 F.2d at 564. Accordingly, the standard is whether the alleged change amounts to "essentially the same work as the parties bargained for when the contract was awarded." Aragona Constr. Co. v. United States, 165 Ct.Cl. 382, 391 (Ct. Cl. 1964). If it does, then no cardinal change has taken place. Id.

In support of its' claim of cardinal change, Dynalectric alleges that "Whittenberg toward the end of the Project, when the work was congested with many subcontractors simply failed to address the conflicting schedules, and disruptions to the work of Dynalectric. (Pl.'s Mem. 6.) Dynalectric has not articulated how the ultimate completion of electrical installation was cardinally different from the work it agreed to perform under the subcontract. Aside from the delays, disruptions, and

accelerations, Dynalectric's work remained of the same nature as bargained for in the subcontract. They were tasked to complete the electrical work and did so, albeit on a delayed schedule. The cardinal change claim is without merit.

### 4. Unjust Enrichment

Kentucky prohibits quantum meruit claims where an express written contract exists between the parties. See Codell Const. Co. v. Commonwealth, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977) ("The doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed."); Perkins v. Daugherty, 722 S.W.2d 907, 909 (Ky. Ct. App. 1987) (stating theory of unjust enrichment is "not based upon a contract but a legal fiction invented to permit recovery where the law of natural justice says there should be a recovery as if promises were made."). It is uncontroverted that the subcontract and prime contract governed the Dynalectric and Whittenberg relationship. Dynalectric cannot recover under quantum meruit in the face of such express, enforceable contracts. Accordingly, Dynalectric's claim for quantum meruit fails.

### 5. Active Interference

Lastly, Plaintiff alleges that Whittenberg actively interfered with its ability to work and therefore the Court should find exception with the provisions precluding the equitable adjustment claim. The active interference doctrine was first recognized by Kentucky courts in Humphreys v. J. B. Michael & Co., 341 S.W.2d 229 (Ky. 1960), and "arises from the concept that other parties owe an implied obligation to refrain from doing anything that would unreasonably interfere with a contractor's opportunity to proceed with its work in a manner provided by a contract." Apex Contracting, 2004 WL 758276 at *5 (citing U.S. Steel Corp. v. Missouri Pac. R.R. Co., 668 F.2d 435, 438 (8th Cir. 1982). See, e.g., E.C. Ernst, Inc. v. Manhattan Constr. Co. of Texas, 551 F.2d

1026, 1029 (5th Cir. 1977) ("Given their harsh effect, courts will strictly construe [no damage for delay] provisions but generally enforce them absent delay . . . amounting to active interference."); Coatesville Contractors & Eng'rs, Inc. v. Borough of Ridley Park, 506 A.2d 862, 866 (Pa. 1986) (refusing to uphold no damage for delay provision "where (1) there is an affirmative or positive interference by the owner with the contractor's work, or (2) there is a failure on the part of the owner to act in some essential matter necessary to the prosecution of the work."). "[U]se of the term "active" to modify "interference" has been recognized universally to imply more than "a simple mistake, error in judgment, lack of total effort, or lack of complete diligence." Bruner & O'Connor, supra, § 15:77.

Dynalectric alleges that Whittenberg's "inability to timely address the problems on the project, amounts to active interference with Dynalectric's work." (Pl.'s Mem. 26.) This allegation, even if true, does not rise to the level of active interference. Dynalectric has to evince more than lack of diligence or complete effort. See Thomas & Assoc., Inc. v. Metro. Gov't of Nashville, 2003 WL 21302974, at *16 (Tenn. Ct. App. June 6, 2003) ("[Plaintiff] has in no way shown that the [Defendant] actively interfered with its operations, but merely that the [defendant] could have done more to timely coordinate the relocation of utilities. To show the type of active interference that would render the "no damage for delay" clause unenforceable, the contractor had to point up something far more affirmative than lack of diligence."); Blue Water Envtl. Inc. v. Inc. Vill. of Bayville, 843 N.Y.S.2d 681, 684 (N.Y. App. Div. 2007) (upholding "no damage for delay" provision, because "[t]here is no exception for delays resulting from inept administration, as distinguished from willful interference"). Dynalectric has failed to raise a triable issue of fact as to whether the delays were caused by active interference.

14

Accordingly, summary judgment as to the equitable adjustment claim is proper. Although Whittenberg alleges alternative grounds for dismissing the equitable adjustment claim, they need not be addressed based on the foregoing.

## B. Retention Funds

Dynalectric has also asserted a claim seeking to compel payment of the $77,000 being held by Owner because the chandelier issue has not been resolved. Whittenberg contends that Dynalectric's claim is not ripe until the chandelier issues have been resolved as the contract has a "pay when paid" provision which states that Dynalectric is not entitled to payment until "10 days after full payment of [the Subcontractor's] work and materials has been received by the Contractor from the Owner." (Def.'s Mot. 18.) Dynalectric maintains that Whittenberg's failure to address and remedy the situation amounts to a breach of the implied covenant of good faith and fair dealing.

Kentucky recognizes that "[i]n every contract, there is an implied covenant of good faith and fair dealing." Ranier v. Mount Sterling Nat'l Bank, 812 S.W.2d 154, 156 (Ky. 1991). "That covenant imposes a duty upon the parties to do everything necessary to carry out the purposes and provisions of the contract." Prather v. Providian Nat. Bank, 2007 WL 1784084, at *4 (Ky. Ct. App. June 8, 2007) (citing Ranier, 812 S.W.2d at 156.) "Thus, whenever the cooperation of the promisee is necessary for the performance of the promise, there is a condition implied that the cooperation will be given." 17A Am. Jur. 2d Contracts § 370 (2010).

Whittenberg contends that Dynalectric's allegation that it has breached its duty of good faith and fair dealing is devoid of any supporting evidence and is ridiculous since the power to accept or reject Dynalectric's work is exclusively held by the Architect. However, simply arguing that the claim is not ripe and that some other party has the power to release the funds, does not show the lack

15

of a genuine issue of fact as to whether Whittenberg has breached its duty to engage in good faith and fair dealing. The Court finds that Whittenberg has failed in its initial burden on summary judgment and that Dynalectric was not required to come forward with evidence from the record to show the existence of an issue of fact relating Whittenberg's alleged breach of its duty of good faith and fair dealing.

The Court notes that Dynalectric's complaint is not specific as to how Whittenberg has breached its duty of good faith and fair dealing on the chandelier question. At the time of the complaint, Dynalectric's good faith and fair dealing claim involved many change orders. The parties apparently settled many of the claims and only the chandelier system claim remains. The Court does not know whether discovery has ferreted out with precision what Dynalectric's evidentiary support is for its claim that Whittenberg has breached its duty. Other than disclosing that the Owner and Architect have refused certain recommended changes, the record disclosed to the Court reveals very little about Whittenberg's involvement or lack of involvement in resolving this issue, and nothing about what is customarily required of a Contractor in these circumstances.

It may be that Dynalectric cannot survive a properly supported summary judgment motion on this issue. If it cannot, it will be because Dynalectric cannot show the existence of an genuine issue of fact that Whittenberg violated its contractual duty, not simply because the Architect is holding the funds. Whittenberg is granted leave to file a new summary judgment motion related to this claim.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment [DN 109] by Defendant Whittenberg Construction Co. is **GRANTED in part and DENIED in part**.  It is granted as to Plaintiff's claim for equitable adjustment and denied as to Plaintiff's claim for retention funds.

cc:	Counsel of Record